**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CANDY A. C.,[1]
    Plaintiff,

        v.                                Civil No. 3:20cv107 (JAG)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income under the Social Security Act. Candy A. C. ("Plaintiff"), forty-two years old at the time of her benefits application, previously worked as a certified nursing assistant, a cook, and as a maid/cleaner. (R. at 23, 66.) Plaintiff suffers from asthma, chronic obstructive pulmonary disease ("COPD"), and obesity. (R. at 17.) Plaintiff asserts that her impairments and symptoms, including shortness of breath, render her unable to work. (R. at 40.)

On January 17, 2019, an Administrative Law Judge ("ALJ") denied Plaintiff's application for supplemental security income. (R. at 25.) After Plaintiff's application was denied, and after exhausting her administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

§ 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled." Specifically, Plaintiff contends that the ALJ (1) erred by failing to account for Plaintiff's use of a nebulizer when determining her residual functional capacity, and (2) erred in assessing Plaintiff's arthritis diagnosis. (Pl.'s Brief in Supp. of Mot. For Summ. J. 3-9, ECF No. 19 ("Pl.'s Mem.").)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, that the Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On February 28, 2017, Plaintiff filed an application for supplemental security income, alleging disability due to COPD, bone spurs, leg pain and swelling, arthritis, high cholesterol, depression, and attention-deficit/hyperactivity disorder. (R. at 53-54.) The Social Security Administration denied Plaintiff's claim initially on June 27, 2017, and again upon reconsideration on December 21, 2017. (R. at 64-65, 79-80.) Plaintiff requested a hearing before an ALJ, and the hearing was held on October 4, 2018. (R. at 33, 94.) On January 17, 2019, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 15-25.) Plaintiff requested review of the ALJ's decision, and on

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

January 30, 2020, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1, 88.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper

3

standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On October 4, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 33-52.) On January 17, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 15-25.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 18-30); 20 C.F.R. § 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her application date of February 28, 2017. (R. at 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: asthma, COPD,

4

and obesity. (R. at 17.) At step three, the ALJ determined that neither of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20-21.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 21-23.) Based on this evidence the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs and she can never climb ladders/ropes/scaffolds. She can have frequent exposure to extreme heat, cold, humidity, and wetness, frequent exposure to vibrations, and occasional exposure to pulmonary irritants, including fumes, odors, dust, and gas.

(R. at 21.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform her past relevant work. (R. at 23-24.) The ALJ concluded that Plaintiff's limitations prevented her from performing any of her past relevant work. (R. at 24.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 24.) The ALJ weighed the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of occupations such as cashier, sales attendant, and non-postal mail clerk. (R. at 24.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 25.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 25.)

# IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that the ALJ erred in evaluating Plaintiff's residual functional capacity by failing to account for Plaintiff's use of a nebulizer machine, and that the ALJ committed several errors in assessing Plaintiff's arthritis diagnosis. (Pl.'s Mem. at 3-9.) For the reasons set forth below, the ALJ did not err in denying Plaintiff's application for benefits.

### A. The ALJ Did Not Err by Omitting a Time Off-Task Limitation in Plaintiff's Residual Functional Capacity Determination.

Plaintiff argues that the ALJ erred by failing to include a time off-task limitation in Plaintiff's residual functional capacity to account for Plaintiff's use of a nebulizer. (Pl.'s Mem. at 3-5.) Plaintiff contends that although Plaintiff did not testify regarding her use of a nebulizer, the Court should take judicial notice that it "typically" takes at least fifteen minutes to complete a nebulizer treatment, and therefore the ALJ should have included a time off-task limitation in Plaintiff's residual functional capacity. (Pl.'s Mem. at 4.) In response, Defendant argues that the ALJ fully accounted for all functional limitations related to Plaintiff's asthma and COPD. (Def.'s Mot. For Summ. J. and Br. in Supp. Thereof 9-12, ECF No. 20 ("Def.'s Mem.").)

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. § 416.945. Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [the claimant's] ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.920(a)(4)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. § 416.945(b), (c). The residual functional capacity formulation must incorporate impairments supported by objective

medical evidence in the record and those impairments that are based on the claimant's credible complaints. § 404.1529(a).

The record demonstrates that Plaintiff was prescribed medication to use in a nebulizer, up to four times per day as needed. (R. at 309, 321, 357.) The ALJ reviewed the record relating to Plaintiff's pulmonary conditions and nebulizer use. (R. at 21.) The ALJ recognized that Plaintiff has a history of respiratory disorders, is prescribed to use a nebulizer machine, and did in fact use her nebulizer. (R. at 21 (citing R. at 315-16, 320-21).) However, the ALJ did not include a time off-task limitation in Plaintiff's residual functional capacity. (R. at 21.)

No evidence in the record supports a time off-task limitation for Plaintiff's use of a nebulizer. *See* § 404.1529(a). None of Plaintiff's medical providers opined that she was *required* to use a nebulizer, but rather just that she could use the nebulizer *as needed*. (R. at 309, 321, 357.) None of the medical evidence reflects how often Plaintiff actually used the nebulizer. (*See* R. at 347 (Plaintiff reporting using nebulizer as needed).) Nor did Plaintiff testify whether, or how often she uses a nebulizer.[4] The medical evidence simply reflects that Plaintiff was to use her nebulizer as needed. (R. at 309, 321, 357.)

Plaintiff has not identified any portions of the record that suggest her use of a nebulizer would interfere with her ability to work on a sustained basis. *Cf. Sherlene S. v. Saul*, No. 8:18-cv-01575, 2019 WL 3720531, at *4 (D. Md. Aug. 5, 2019) (holding that the ALJ erred by failing to account for Plaintiff's nebulizer treatment time where Plaintiff's medical records demonstrated that on one occasion she was prescribed to use her nebulizer three times per day, once every eight hours, and on another occasion, she was prescribed to use her nebulizer every four to six hours).

---

[4] Plaintiff testified that she was "getting a breathing machine" prescribed by Dr. Corbett. (R. at 41.) It is unclear whether the "breathing machine" Plaintiff refers to is a nebulizer machine.

It is Plaintiff's burden, not the Commissioner's, to prove that Plaintiff requires such a limitation. *See* § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Given the lack of medical evidence regarding Plaintiff's nebulizer use, and the lack of evidence regarding how Plaintiff's nebulizer use would affect her ability to work on a sustained basis, it was not error for the ALJ to omit a time off-task limitation in Plaintiff's residual functional capacity.

Plaintiff submits that this Court may take judicial notice that the use of a nebulizer takes fifteen minutes per day. (Pl.'s Mem. at 3-4.) A court may take judicial notice of "a fact that is not subject to reasonable dispute" if it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). The Court will not take judicial notice of other social security claimant's medical requirements and determine that those requirements apply to Plaintiff, as that assertion cannot be readily determined by accurate sources. *See* Fed R. Evid. 201(b).

Because there is no evidence in the record to support a time off-task limitation for Plaintiff's use of a nebulizer, the ALJ did not err by failing to include a time off-task limitation in the residual functional capacity determination.

### B. The ALJ Properly Evaluated Plaintiff's Arthritis.

Plaintiff argues that the ALJ erred in evaluating her arthritis by: (1) failing to assess the type of arthritis Plaintiff appears to have, (2) finding that Plaintiff's arthritis was nonsevere at step two of the sequential evaluation process, (3) failing to make a finding at step one of the *Craig v. Chater* pain inquiry regarding whether Plaintiff's arthritis could reasonably be expected to cause

the pain alleged, and (4) rejecting the treating physician's opinion regarding Plaintiff's arthritis. (Pl.'s Mem. at 5-9.) The Court will address each argument below.

    *1. The ALJ Did Not Err by Not Specifying Which Type of Arthritis Plaintiff Has.*

Plaintiff first argues that the ALJ erred by considering Plaintiff's arthritis diagnosis "as being *osteo*arthritis, when it is most likely that [Plaintiff] had . . . *rheumatoid* arthritis."[5] (Pl.'s Mem. at 9.) In response, Defendant argues that the record does not specify which type of arthritis Plaintiff has, and therefore the ALJ properly considered the record in evaluating Plaintiff's impairment. (Def.'s Mem. at 13.)

The medical record is scant regarding any evidence of Plaintiff's arthritis diagnosis, let alone whether the diagnosis was for osteoarthritis or rheumatoid arthritis. Few of Plaintiff's medical records mention the word arthritis. Some records do mention arthritis, but they simply state that arthritis is a comorbidity to Plaintiff's obesity, or listed arthritis as one of Plaintiff's "assessments" or in her past medical history. (R. at 286-87, 289, 291, 293, 295, 300, 302.)

The ALJ considered Plaintiff's "arthritis" and considered evidence in the record related to that impairment. (R. at 17-18.) The ALJ considered the medical records related to Plaintiff's leg swelling—even though no medical record connected Plaintiff's leg swelling to her arthritis diagnosis. (R. at 18.) Ultimately, in relation to Plaintiff's arthritis, the ALJ concluded that:

> [t]he medical record contains no objective support to find a severe neuropathic impairment. [Plaintiff's] sensation has been unremarkable and she has not had any further testing such as EMG or nerve conduction studies to show neuropathy. In addition, there are no x-rays or other imaging to confirm a diagnosis of arthritis or

---

[5] Osteoarthritis "occurs when the protective cartilage on the ends of [the] bones wears down over time." *Osteoarthritis*, The Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/osteoarthritis/basics/definition/con-20014749 (last visited April 22, 2021). In contrast, rheumatoid arthritis occurs when the immune system attacks the body's connective tissue. *Rheumatoid Arthritis*, The Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/basics/definition/con-20014868 (last visited April 22, 2021).

9

>degenerative changes and her physical examinations showing normal strength, range of motion, and sensation do not support a musculoskeletal impairment.

(R. at 18.)

The ALJ did not err for two reasons. First, there is no evidence in the medical record that indicates whether Plaintiff's providers considered her to have, or opined that she has rheumatoid arthritis. Plaintiff's providers simply mention that she has "arthritis." (*See* R. at 286-87, 289, 291, 293, 295, 300, 302.) Thus, it was not error for the ALJ to consider Plaintiff's arthritis diagnosis generally, given that the medical record also only referred to Plaintiff's arthritis diagnosis generally.

Second, contrary to Plaintiff's assertion, the ALJ's decision does not "strongly impl[y]" that the ALJ only considered osteoarthritis. (Pl.'s Mem. at 5.) Plaintiff contends that the ALJ relied on the "the absence of confirmatory x-rays and the absence of degenerative changes" to consider Plaintiff's arthritis impairment, which, according to Plaintiff, evidences that the ALJ "thought she was called upon to assess an allegation of *osteoarthritis* rather than rheumatoid arthritis." (Pl.'s Mem. at 5.) In fact, in evaluating Plaintiff's arthritis, the ALJ also considered and relied on Plaintiff's unremarkable sensation and the lack of EMG or nerve conduction studies demonstrating neuropathy. (R. at 18.) Accordingly, the ALJ's decision implies that she considered both evidence that would relate to a rheumatoid arthritis diagnosis (EMG and nerve conduction studies) and evidence that would relate to osteoarthritis (x-rays). (R. at 18.)

As such, the ALJ properly considered the scant evidence related to Plaintiff's arthritis diagnosis, and did not err by failing to classify Plaintiff's arthritis impairment as either osteoarthritis or rheumatoid arthritis.

> 2. *The ALJ Did Not Err by Classifying Plaintiff's Arthritis as Nonsevere at Step Two of the Sequential Evaluation.*

Plaintiff's second argument alleges that the ALJ erred by classifying Plaintiff's arthritis as nonsevere at step two of the sequential evaluation process. (Pl.'s Mem. at 2, 5-6.) In response, Defendant argues that there is little evidence that Plaintiff's arthritis caused any functional limitations in order to be classified as severe, and regardless, the ALJ does not err at step two so long as the ALJ proceeds with the sequential evaluation process. (Def.'s Mem. at 13-15.)

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that are severe. § 416.920(a)(4)(ii). An impairment is "not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities," and when medical and other evidence establish only a slight abnormality or combination of abnormalities that would have no more than a limited effect on an individual's ability to work. § 416.922(a). It is the claimant's burden to demonstrate an impairment is severe. §§ 416.920(a)(4)(ii), 416.920(c).

As explained above, there is little evidence in the record regarding Plaintiff's arthritis diagnosis, and Plaintiff has not alleged that her arthritis significantly limits her ability to do basic work activities. Plaintiff occasionally reported having some joint pain and frequently reported leg swelling, but none of Plaintiff's providers attributed the cause of these symptoms to arthritis, or explained how those symptoms would affect her functional abilities. (*See* R. at 301, 339, 342, 345, 420, 439.) Additionally, many of the records Plaintiff contends support arthritis pain in fact had nothing at all to do with arthritis, and instead were related to a trip and fall injury.[6] (R. at 306, 309-

---

[6] Plaintiff also cited a record from Plaintiff's dentist in support of the contention that Plaintiff had swelling in her feet and legs. (Pl.'s Mem. at 3 (citing R. at 497).) The Court cautions Counsel to ensure accurate briefing regarding the medical evidence.

10, 357-58.) Thus, the record does not demonstrate, and Plaintiff has not pointed to any evidence that demonstrates Plaintiff's arthritis significantly limits her ability to do basic work activities. *See McLaughlin v. Saul*, No. 1:18cv00045, 2019 WL 9055824, at *15 (W.D. Va. Dec. 6, 2019) ("[A] diagnosis alone, without a showing of related functional loss is not disabling."). Accordingly, the ALJ did not err by classifying Plaintiff's arthritis as nonsevere at step two of the sequential evaluation process.

Even if the ALJ erred by failing to classify Plaintiff's arthritis as severe at step two of the sequential evaluation process, the error is harmless. An error at step two of the sequential evaluation process is harmless so long as the ALJ finds at least one severe impairment and considers an impairment's effects in subsequent steps of the sequential evaluation. *Leith v. Berryhill*, No. 1:16-cv-01565, 2017 WL 6628915, at *8 (E.D. Va. Dec. 28, 2017). Here, the ALJ found at least one severe impairment, and continued the analysis and considered the alleged effects of Plaintiff's arthritis at subsequent steps in the sequential evaluation. (R. at 23). In considering Plaintiff's impairments, the ALJ recognized Plaintiff's "sporadic lower extremity edema" and found that symptom warranted a limitation in climbing, balancing, and stooping, as well as a limitation in tolerance to vibrations and hazards in Plaintiff's residual functional capacity. (R. at 23.) Therefore, even if the ALJ erred by not classifying Plaintiff's arthritis as severe, the ALJ accounted for any possible functional limitations in Plaintiff's residual functional capacity that are supported by the record, and accordingly, any error was harmless.

    3. *The ALJ Did Not Err at Step One of the Craig v. Chater Pain Inquiry.*

Third, Plaintiff argues that the ALJ erred at step one of the two-step *Craig v. Chater* pain inquiry by failing to make a finding regarding whether Plaintiff's arthritis could reasonably be expected to cause the pain that Plaintiff alleged. (Pl.'s Mem. at 5-6.) Specifically, Plaintiff

contends that the ALJ conducted a credibility assessment at step two of the sequential evaluation process "without ever subjecting the pain allegations attributable to arthritis to [s]tep [o]ne of the two-part *Craig* analysis." (Pl.'s Mem. at 6.) In response, Defendant contends that the ALJ satisfied step one of the *Craig* inquiry by finding that Plaintiff's medically determinable impairments could be expected to cause some of Plaintiff's alleged symptoms, and proceeding to consider all of Plaintiff's impairments and symptoms. (Def.'s Mem. at 16.)

An ALJ's residual functional capacity determination must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. § 404.1529(a). When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. § 404.1529(a); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).

The first step of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. § 404.1529(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second step of the *Craig* inquiry and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595. Any error at step one of the *Craig* inquiry is harmless so long as the ALJ makes a favorable finding and continues the analysis to step two of the inquiry. *Powell v. Colvin*, No. 3:16-cv-56, 2016 WL 6562071, at *6 (E.D. Va. Oct. 14, 2016), *report and recommendation adopted*, No. 3:16-cv-56, 2016 WL 6542849 (E.D. Va. Nov. 3, 2016).

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 22.) The ALJ then detailed the medical evidence and Plaintiff's testimony to conclude that Plaintiff's allegations were not as severe as alleged. (R. at 22.)

The ALJ's conclusion here satisfies step one of the *Craig* inquiry because the ALJ made a threshold determination that Plaintiff has an underlying medically determinable physical impairment that could reasonably produce her alleged pain or other symptoms. *See Powell*, 2016 WL 6562071, at *6. Contrary to Plaintiff's assertion, at step one of the *Craig* inquiry, the ALJ is not required to specifically identify which medically determinable impairment could reasonably be expected to cause Plaintiff's symptoms.[7] *See Craig*, 76 F.3d at 594; *Powell*, 2016 WL 6562071, at *6. Accordingly, the ALJ did not err on this ground.

    4.   *The ALJ Did Not Err in Evaluating the Treating Physician's Opinion.*

Finally, Plaintiff contends that the ALJ erred by rejecting the opinion of one of Plaintiff's treating physicians, Dr. Gregory Schroder, and "wrongly assum[ing] that the treating physician had diagnosed *osteo*arthritis." (Pl.'s Mem. at 6-7.) Defendant responds that the ALJ was not required to weigh any opinion about an arthritis diagnosis because it did not relate to Plaintiff's ability to work, and that again, Plaintiff's diagnosis of arthritis only referred to arthritis generally. (Def.'s Mem. at 17-18.)

---

[7] Even if the ALJ did err by not specifically identifying Plaintiff's arthritis as a medically determinable impairment that could reasonably be expected to cause Plaintiff's symptoms, any error would be harmless because the ALJ made the threshold determination at step one, and continued the analysis to step two of the inquiry. (R. at 22-23); *Powell*, 2016 WL 6562071, at *6.

14

In general, an ALJ must consider all medical opinions in the record. § 416.927(c). Medical opinions "are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." § 416.927(a). Generally, a treating physician's opinion is given controlling weight, unless it is unsupported or inconsistent with other evidence in the record. § 416.927(c)(2); *see Arakas*, 983 F.3d at 106; SSR 96-2p, 1996 WL 374188 (July 2, 1996).

According to Plaintiff, Dr. Schroder "assessed her as having arthritis in October and November of 2016, and in January 2017." (Pl.'s Mem. at 3 (citing R. at 291, 295, 302).) Dr. Schroder listed arthritis as one of Plaintiff's "assessments" on those three occasions. (R. at 291, 295, 302.) However, as previously explained, none of Plaintiff's treating or examining physicians, including Dr. Schroder, identified Plaintiff's type of arthritis, explained the nature or severity of her arthritis, or explained what, if any, functional limitations resulted from Plaintiff's arthritis diagnosis. Thus, contrary to Plaintiff's assertion, there was no "opinion" regarding Plaintiff's arthritis from a treating physician for the ALJ to reject. Even if Dr. Schroder's act of listing arthritis as one of Plaintiff's assessments could be considered an "opinion" the ALJ did not reject any opinion or evidence that Plaintiff has arthritis, and as explained above, incorporated any possible functional limitations related to Plaintiff's arthritis diagnosis in her residual functional capacity. (R. at 18 (explaining the evidence related to Plaintiff's arthritis diagnosis), 23 (incorporating climbing and hazard exposure restrictions in Plaintiff's residual functional capacity).) Thus, the ALJ did not err on this ground.

In sum, the ALJ considered Plaintiff's arthritis diagnosis, and incorporated any functional limitations supported by the record in her residual functional capacity. Accordingly, the ALJ did not err in evaluating Plaintiff's arthritis.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 17) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 29, 2021